## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DAVID STEELMAN**,

       Plaintiff,

vs.                                  No.    **CIV 02-667 MCA/RLP**

**ROBERT LOGAN**, Chief Jail Administrator,
**COLLEEN JOHNSTON**, Assistant Jail Administrator,
**THE CITY OF CLAYTON**,
**THE CITY COUNCIL OF THE CITY OF CLAYTON**,
and **MARY GOOLSBE/SKIDMORE**,
Clayton Jail Supervisor, in their
Official and Personal Capacities,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court pursuant to the following motions: ***Defendants' Motion for Summary Judgment Based on Qualified Immunity*** [Doc. No. 32] filed on November 14, 2003; ***Plaintiff's Motion to Strike*** [Doc. No. 38] filed on December 1, 2003; ***Plaintiff's Motion for Leave to File His Second Amended Opposition to Defendants' Motion for Summary Judgment*** [Doc. No. 48] filed on December 29, 2003; and ***Plaintiff's Motion for Permission to File and Proceed on His Attached Plaintiff's Surrebuttal to Defendants' Rereply to Plaintiff's Original and Amended Opposition to Defendants' Motion for Summary Judgment*** [Doc. No. 49] filed on December 29, 2003.

Having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, the Court denies Plaintiff's motion to strike [Doc. No. 38] and grants Defendants' summary-judgment motion [Doc. No. 32] for the reasons set forth below. Plaintiff's motions for leave to supplement his responses to Defendants' motion [Doc. No. 48, 49] are granted, and the Court has considered the supplementary responses attached to Plaintiff's motions in ruling on Defendant's motion.

## I.    **BACKGROUND**

Plaintiff David Steelman filed this civil action in the Eighth Judicial District Court of the State of New Mexico on May 14, 2002, alleging numerous claims relating to his treatment at the Clayton Jail in Clayton, New Mexico.  He appears *pro se*.

Defendants removed the action to the United States District Court for the District of New Mexico on June 7, 2002.  [Doc. No. 1.]  Pursuant to a series of stipulated orders [Doc. No. 22, 23, 24], certain claims were dismissed, and Plaintiff was granted leave to file a *Second Amended Complaint* [Doc. No. 25] limited to claims involving his medical care and treatment.  The allegations in Plaintiff's *Second Amended Complaint* support both federal-question jurisdiction and diversity jurisdiction.

Defendants subsequently filed a motion for summary judgment [Doc. No. 32] as to all claims in Plaintiff's *Second Amended Complaint*.  The undisputed facts and evidence of record regarding these claims can be summarized in the light most favorable to Plaintiff as follows.

On November 5, 2001, Plaintiff was extradited from the Wayne County Jail in Detroit, Michigan, and transported to the Clayton Jail in Clayton, New Mexico.   Plaintiff arrived at the Clayton Jail on the evening of November 6, 2001.  At that time, the sheriff's deputies who transported Plaintiff turned over certain medications to the jailer on duty, whom Plaintiff identifies as an individual named "Lou."[1]  Plaintiff claims that the jailer "Lou" was informed by sheriff's deputies that, pursuant to a Michigan doctor's orders, Plaintiff was to keep his nitroglycerin pills and two inhalers (containing Albuterol and Atrovent) on his person at all times because he has a history of heart attacks and breathing problems.  Plaintiff claims that the jailer "Lou" then gave these medications to him to keep on his person in the jail.  [Steelman Aff. 11-20-03, ¶¶ 5-9; Steelman Aff. 12-10-03, ¶¶ 5-9; Ex. P-2 to Doc No. 37; Ex. G to Doc No. 41.]

At 8:06 a.m. on the morning of November 7, 2001, another jail employee, Defendant Mary Goolsbe/Skidmore, administered Dilatin, Tylenol,and Isorbide to Plaintiff in the Clayton Jail.   At that time, Defendant Goolsbe/Skidmore noticed that Plaintiff had the nitroglycerin pills and the two inhalers in his possession.   She then confiscated the nitroglycerin pills and the two inhalers.  [Steelman Aff. 12-23-03, ¶ 6.]  Later that morning, Plaintiff made his first appearance before the Union County Magistrate Court on charges of fraud and practicing law without a license.  [Ex. B to Doc No. 33.]

---

[1]The Arrest/Booking Report submitted by Defendants lists an individual named "Lourdes Arguello" as the booking officer.  [Ex. G to Doc No. 41.]  Thus, "Lourdes Arguello" may be the full name of the jailer "Lou" identified in Plaintiff's affidavits.

Inmate prescription records dated November 7, 2001, indicate that Plaintiff had prescriptions for the following medications:  Isordil, Tenormin, Tylenol, Dilantin, Proventil/Albuterol/Warrick, and Atrovent.  The records for Proventil/Albuterol/Warrick and Atrovent indicate that the dosage was "2 separate puffs every 4 hours."  [Ex. J to Doc No. 41.]  The record for Atrovent also contains the notation "as needed."  Plaintiff disputes that all of these medications were actually administered as indicated on these records.  [Steelman Aff. 12-23-03, ¶ 6.]

Plaintiff claims that he was taken to the Union County General Hospital some time before twelve noon on November 7, 2001.  [Steelman Aff. 12-23-03, ¶ 6.]  Hospital records indicate that Plaintiff was seen in the emergency room and then admitted to the hospital for inpatient care based on a complaint of "chest pain described as sharp stabbing going into his left arm."  [Ex. C to Doc. No. 33; Ex. P-3 to Doc No. 39.]  Plaintiff claims that these problems occurred because he did not have his nitroglycerin pills and inhalers on his person after Ms. Goolsbe/Skidmore confiscated them.  [Steelman Aff. 11-20-03, ¶ 12; Steelman Aff. 12-10-03, ¶ 12.]  After Plaintiff was placed on oxygen and given medication to treat his breathing problems at the hospital, his condition stabilized.  He was discharged from the Union County General Hospital on November 12, 2001.  [Ex. C to Doc No. 33.]

Dr. Michael L. Jenkins was Plaintiff's treating physician at the Union County General Hospital.  In Dr. Jenkins' opinion, Plaintiff needed his nitroglycerin and bronchodilator medications to remain in stable condition, and the Clayton Jail should not have confiscated

Plaintiff's nitroglycerin pills and his inhalers without first consulting a physician.  [Jenkins Aff. 12-18-03, ¶¶ 5-8.]

According to documents submitted by Defendants, it is the policy of the Clayton Jail to confiscate medications of pre-trial detainees when they enter the jail.  Another policy of the Clayton Jail requires inmate medications to be stored, handled, and administered by jail personnel under the direction of the medical staff.  [Ex. H, I to Doc No. 41.]

After this litigation commenced, Plaintiff's medical records were reviewed by Dr. Orrin McLeod, the contract director for a detention facility in Estancia, New Mexico, operated by the Corrections Corporation of America (CCA).  In Dr. McLeod's opinion, it is standard and customary procedure to seize medications from inmates upon their entry into a detention facility in order to prevent the smuggling of contraband.  [McLeod Aff. 11-11-03, ¶¶ 1, 6; McLeod Aff. 12-18-03, ¶¶ 1, 2, 5.]

Dr. McLeod further opined that all of Plaintiff's medical conditions, including his breathing problems, were chronic in nature and predated his incarceration at the Clayton Jail. According to Dr. McLeod, Plaintiff's medical conditions and complaints on November 7, 2001, did not result from the confiscation of his medications by jail personnel.  [McLeod Aff. 11-11-03, ¶¶ 1, 6, 9-11; McLeod Aff. 12-18-03, ¶ 6.]

Plaintiff's *Second Amended Complaint* alleges that Defendant Robert Logan is the Chief Jail Administrator of the Clayton Jail, and that Defendant Colleen Johnston is the Assistant Jail Administrator of the Clayton Jail.  [Doc. No. 25, ¶¶ 2-3.]  The parties have presented no evidence, however, that these individuals were involved in any of the events

in November 2001 which form the basis for Plaintiff's claims, or that they had any supervisory or policy-making responsibilities with respect to those events.

## II.    ANALYSIS

### A.    Plaintiff's Motions

The Court first addresses Plaintiff's motion to strike and his motions for leave to supplement his initial responses. Plaintiff's motion to strike Defendant's summary-judgment motion is meritless because Fed. R. Civ. P. 12(f) does not require motions for summary judgment to be filed within twenty days of the filing of the complaint. The deadlines for filing motions for summary judgment are set forth in Fed. R. Civ. P. 56 and in the *Initial Pretrial Report*, as amended. [Doc. No. 17, 28.] Defendant's motion was timely filed within the applicable deadlines, and therefore *Plaintiff's Motion to Strike* [Doc. No. 38] is denied.

In response to Defendants' summary-judgment motion, Plaintiff has submitted the following documents: *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment* [Doc. No. 37], *Plaintiff's Amended Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment* [Doc. No. 39], *Plaintiff's Second Amended Opposition to Defendants' Motion for Summary Judgment* [Attachment to Doc. No. 48]; and *Plaintiff's Surrebuttal to Defendants' Rereply to Plaintiff's Original and Amended Opposition to Defendants' Motion for Summary Judgment* [Attachment to Doc. No. 49.] The Court concludes that it is appropriate to allow and consider all of these responses or surreplies because Plaintiff is a *pro se* litigant and Defendants attached additional evidentiary materials to their reply brief. [Doc. No. 41.] See Beaird v. Seagate

Tech., Inc., 145 F.3d 1159, 1163-65 (10th Cir. 1998) (stating grounds for considering a surreply); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating standards applicable to *pro se* litigants).

Accordingly, the Court grants *Plaintiff's Motion for Leave to File His Second Amended Opposition to Defendants' Motion for Summary Judgment* [Doc. No. 48], and the Court grants *Plaintiff's Motion for Permission to File and Proceed on His Attached Plaintiff's Surrebuttal to Defendants' Rereply to Plaintiff's Original and Amended Opposition to Defendants' Motion for Summary Judgment* [Doc. No. 49]. The Court considers the supplemental responses attached to those motions in ruling on *Defendants' Motion for Summary Judgment Based on Qualified Immunity* [Doc. No. 32].

### B.   Defendants' Motion for Summary Judgment

#### 1.   Standard of Review

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. See id. at 248. Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of

proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

When an individual defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct.  See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001).  If the plaintiff fails to meet this burden, then the Court must grant the defendant qualified immunity.  See id. at 1156.  If the plaintiff does establish the violation of a clearly-established constitutional or statutory right, then (for purposes of the defendant's summary-judgment motion) the burden shifts to the defendant to prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.  See id.

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998).  "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence;  conclusory and self-serving affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall, 935 F.2d at 1111).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531,

-8-

1541 (10th Cir. 1995); <u>see also</u> <u>Starr v. Pearle Vision, Inc.</u>, 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

In this case, the parties have submitted exhibits and affidavits that contain hearsay and hearsay within hearsay.  In reviewing these materials to determine whether Defendants are entitled to summary judgment, the Court does not consider statements that affiants attribute to others for the purpose of proving the truth of the matters asserted therein, except for admissions by a party opponent (or agent thereof) which the affiant or deponent witnessed. <u>See</u> Fed. R. Evid. 801(d)(2); <u>Wright-Simmons</u>, 155 F.3d at 1268; <u>Pastran v. K-Mart Corp.</u>, 210 F.3d 1201, 1203 n.1 (10th Cir. 2000).  <u>But</u> <u>cf.</u> Fed. R. Evid. 408 ("Evidence of conduct or statements made in compromise negotiations is . . . not admissible.").

The Court does, however, consider statements attributed to third parties when they are offered for other admissible purposes.  In particular, such statements may be considered for the limited purpose of showing their effect on the listener or the declarant's state of mind. <u>See</u> <u>Faulkner v. Super Valu Stores, Inc.</u>, 3 F.3d 1419, 1434 (10th Cir. 1993) (effect on the listener); <u>Wright v. Southland Corp.</u>, 187 F.3d 1287, 1304 n.21 (11th Cir. 1999) (declarant's state of mind); <u>Pastran</u>, 210 F.3d at 1203 n.1 (similar).  They also may be considered as verbal acts or operative facts when legal consequences flow from the utterance of the statements.  <u>See generally</u> <u>Echo Acceptance Corp. v. Household Retail Servs., Inc.</u>, 267 F.3d 1068, 1087 (10th Cir. 2001).

The parties have submitted multiple affidavits by the same persons in support of their contentions in this case.  The Court may disregard an affidavit that contradicts the affiant's

prior sworn statements if the Court finds that such an affidavit constitutes an attempt to create a "sham fact issue." Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986); see also Burns v. Bd. of County Comm'rs, 330 F.3d 1275, 1281-82 (10th Cir. 2003) (applying this rule to corrections to deposition testimony). In determining whether an affidavit constitutes an attempt to create a sham fact issue, the Court considers (1) whether the affiant was cross-examined during his earlier testimony, (2) whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and (3) whether the earlier testimony reflects confusion which the affidavit attempts to explain. See Franks, 796 F.2d at 1237; Burns, 330 F.3d at 1282.

Apart from these limitations, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### 2.     Plaintiff's Federal Civil Rights Claims Under 42 U.S.C. § 1983

Plaintiff's *Second Amended Complaint* [Doc. No. 25] asserts a cause of action under 42 U.S.C. § 1983. This statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Persons sued in their individual capacity under this civil-rights statute generally are entitled to qualified immunity unless it is shown that their actions violated a specific federal statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue.  See Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

Because 42 U.S.C. § 1983 is not an independent source of substantive rights, but rather a mechanism for enforcing federal rights conferred elsewhere, the analysis of the claims asserted in Plaintiff's *Second Amended Complaint* necessarily begins by identifying the specific federal constitutional right which Defendants are alleged to have violated.  See Graham v. Connor, 490 U.S. 386, 393-94 (1989); Reno v. Flores, 507 U.S. 292, 302 (1993). Alleged violations of a state law or the policies and procedures of a municipality or county cannot, standing alone, form the basis for a claim under 42 U.S.C. § 1983.  See Jones v. City & County of Denver, 854 F.2d 1206, 1209 (10th Cir.1988).  Thus, the Court limits its analysis of Plaintiff's cause of action under 42 U.S.C. § 1983 to his assertion that Defendants

violated the Fourteenth Amendment to the United States Constitution by depriving him of his medication, and thereby failing to attend to his medical needs, on November 7, 2001.

The Due Process Clause of the Fourteenth Amendment includes both procedural and substantive components. "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000).

The presumption that criminal defendants are innocent until proven guilty beyond a reasonable doubt is a basic component of procedural due process under the Fourteenth Amendment. See generally Holbrook v. Flynn, 475 U.S. 560, 567-68 (1986). This presumption, however, does not necessarily preclude criminal defendants from being detained before their trials have begun, or being subjected to certain security measures relating to their status as pretrial detainees. See generally Bell v. Wolfish, 441 U.S. 520, 533 (1979); United States v. Nichols, 841 F.2d 1485, 1500 (10th Cir. 1988).

Moreover, "[p]rison administrators [are to be] accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547. Defendants' policy of requiring inmate medications to be stored, handled, and administered by jail personnel falls within the scope of security measures that the State may legitimately impose on pretrial detainees without violating the Due Process Clause of the Fourteenth

Amendment.  The evidence of record in this case does not support a reasonable inference that this policy was applied to Plaintiff for a punitive or arbitrary reason.  See Bell, 441 U.S. at 539-40.

While allowing for such policies with respect to the handling of inmate medication, the substantive component of the Fourteenth Amendment's Due Process Clause does not permit the State to act with deliberate indifference to a pretrial detainee's medical needs.  "Although the Eighth Amendment applies only to convicted inmates, the Fourteenth Amendment's Due Process Clause guarantees pretrial detainees the same degree of medical attention as the Eighth Amendment provides for inmates." Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1320 (10th Cir.1998); see generally Bell, 441 U.S. at 535 & n. 16 (explaining the relationship between the Eighth and Fourteenth Amendments in this context).

The Eighth Amendment requires jail officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir.1998).  In particular, prison officials may be held liable for violating the Eighth Amendment if they exhibit "deliberate indifference" to the "serious medical needs" of an inmate.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id.

-13-

at 104-05. "Intentionally interfering with the treatment once prescribed" may include the refusal to administer or allow access to medication prescribed by a doctor. See id. at 105 n.12 (citing Tolbert v. Eyman, 434 F.2d 625 (9th Cir. 1970) (per curiam)).

As a pretrial detainee, Plaintiff is afforded the same protections under the Fourteenth Amendment in this case. See Barrie v. Grand County, Utah, 119 F.3d 862, 868-69 (10th Cir.1997). Thus, in order prevail on a Fourteenth Amendment claim that Defendants failed to provide adequate medical attention, Plaintiff must show that Defendants knew of the risk involved in confiscating his medication, and were "deliberately indifferent" thereto. Id.

The Supreme Court and the Tenth Circuit have described the "deliberate indifference" requirement as involving both a subjective component and an objective component. See Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); Barney, 143 F.3d at 1310. The severity and the duration of the alleged deprivation are relevant considerations with respect to both components. See Barney, 143 F.3d at 1311-12. Both the subjective and objective components of the "deliberate indifference" requirement must be satisfied in order to prevail on this type of Fourteenth Amendment claim.[2]

---

[2]The majority opinion in Olsen v. Layton Hills Mall, 312 F.3d 1304, 1315-16 (10th Cir. 2002), states that "[w]here disputed material facts implicate *either* of the two questions of whether a serious medical need existed or whether an officer was deliberately indifferent to it, a court may not grant summary judgment." (Emphasis added.) This statement conflicts with established precedent of the Supreme Court and the Tenth Circuit insofar as it suggests that a plaintiff may defeat summary judgment by showing a disputed issue of material fact on only one element of his or her claim. When faced with such a conflict, the Court "should follow earlier, settled precedent over a subsequent deviation therefrom." Haynes v. Williams, 88 F.3d 898, 900 n.4 (10th Cir. 1996). According to earlier, settled precedent, Plaintiff must satisfy both the subjective and objective elements of the "deliberate indifference" requirement, see Wilson, 501 U.S. at 298-99; Barney, 143 F.3d at 1310, and Defendants are entitled to summary judgment if Plaintiff has failed to make an adequate showing on each and every essential element of his case, see Celotex Corp., 477 U.S. at 322-23; Adler, 144 F.3d at 670-71. Therefore, Olsen is disregarded insofar as it deviates from this earlier, settled precedent.

The subjective component is satisfied only if the "'[prison] official knows of and disregards an excessive risk to inmate health and safety.'"  Barney, 143 F.3d at 1310 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  In other words, a plaintiff alleging deliberate indifference to his serious medical needs must show (1) "actual knowledge of the specific risk of harm [to the detainee] ... or that the risk was so substantial or pervasive that knowledge can be inferred,"  (2) "fail[ure] to take reasonable measures to avert the harm," and (3) that "failure to take such measures in light of [the] knowledge, actual or inferred, justifies liability for the attendant consequences of [the] conduct, even though unintended." Berry v. City of Muskogee, 900 F.2d 1489, 1498 (10th Cir.1990) (citations omitted).  "It is not enough to establish that the official should have known of the risk of harm." Barney, 143 F.3d at 1310.  Thus, the fact that treatment of a medical condition is performed negligently or inadvertently delayed for a brief period will not establish the deliberate indifference needed to prevail on this type of Fourteenth Amendment claim.  See Riddle v. Mondragon, 83 F.3d 1197,1203 (10th Cir. 1996).

The objective component requires that the alleged deprivation be "sufficiently serious."  See Wilson, 501 U.S. at 298.  Jail conditions may be "'restrictive and even harsh'" without violating constitutional rights.  Barney, 143 F.3d at 1311 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  "[O]nly those deprivations denying the minimal civilized measure of life's necessities ... are sufficiently grave to form the basis of an Eighth Amendment violation."  Wilson, 501 U.S. at 298 (internal quotation marks and citation omitted).  In this context, a medical need is considered "'sufficiently serious'" if the

condition has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  <u>See Oxendine v. Kaplan,</u> 241 F.3d 1272, 1276 (10th Cir. 2001).

The evidence of record in this case supports a reasonable inference that Plaintiff had a pre-existing medical condition that was diagnosed by a Michigan physician as mandating treatment before his arrival at the Clayton Jail.  Plaintiff has submitted a document from Wayne County Jail Health Services indicating that he reported, or was diagnosed with, a seizure disorder and lung problems (*e.g.*, chronic obstructive pulmonary disease) in September 2001.  [Ex. P-2 to Doc No. 39.]  Several medications for these conditions are listed on the Arrest/Booking Report and inmate prescription records submitted by Defendants.  [Ex. G, J to Doc No. 41.]  In addition, Plaintiff has submitted an affidavit stating that he overheard sheriff's deputies conveying instructions about his medication to the jailer "Lou" who was on duty when he arrived at the Clayton Jail on the evening of November 6, 2001.  [Steelman Aff. 11-20-03, ¶ 8; Steelman Aff. 12-10-03, ¶ 8.]  The medical needs identified in these documents and instructions are sufficiently serious to merit constitutional protection while Plaintiff was in custody at the Clayton Jail.

Nevertheless, Plaintiff's Fourteenth Amendment claim fails because he has not shown that Defendants were deliberately indifferent to these serious medical needs.  In this regard, Plaintiff does not dispute that the jailer "Lou," who was on duty when he first arrived at the Clayton Jail, allowed him to keep the nitroglycerin pills and the two inhalers on his person, and they remained in his possession until approximately 8:06 a.m. the next morning.

Plaintiff also does not dispute that Defendant Goolsbe/Skidmore administered some medications to him at that time (albeit not the nitroglycerin pills or the two inhalers that were in his possession until she confiscated them). Additionally, Plaintiff admits that he was taken to the emergency room at the Union County General Hospital before twelve noon that day when he complained of chest pains. [Steelman Aff. 11-20-03, ¶ 9; Steelman Aff. 12-10-03, ¶ 9; Steelman Aff. 12-23-03, ¶ 6; Ex. C to Doc No. 33.] Plaintiff does not allege that he was denied medical attention at the hospital.

For these reasons, the only basis for Plaintiff's Fourteenth Amendment claim is that Defendant Goolsbe/Skidmore confiscated his nitroglycerin pills and his two inhalers at the time she administered other medications on the morning of November 7, 2001. This claim does not survive Defendants' summary judgment motion because Plaintiff has failed to show that Defendants actually knew of the alleged risk involved in not allowing him to keep his nitroglycerin pills and his two inhalers on his person for a period of approximately four hours on the morning of November 7, 2001, or that they acted with deliberate indifference to this risk.

In particular, Plaintiff has failed to meet his burden of presenting admissible evidence to show that Defendants were aware of medical records prior to his hospitalization on November 7, 2001, which contained specific instructions from a doctor about keeping these medications on his person while in the jail. The only admissible evidence of record to support Plaintiff's contention that Defendants actually knew of such instructions before his hospitalization on that date is the statement in his affidavit to the effect that he overheard

sheriff's deputies conveying instructions about the nitroglycerin pills and the two inhalers to the jailer "Lou" who was on duty when he arrived at the Clayton Jail on the evening of November 6, 2001. According to Plaintiff, the jailer "Lou" permitted him to keep these medications on his person at that time.

While the Court may consider statements that Plaintiff attributes to the sheriff's deputies for the purpose of showing their effect on the listener, see generally Faulkner, 3 F.3d at 1434, these statements do not support a reasonable inference that other jail personnel besides the jailer "Lou" were actually aware that a Michigan doctor had given specific instructions about keeping the nitroglycerin pills or the two inhalers on Plaintiff's person while he was in custody at the Clayton Jail. The most that can be reasonably inferred from the evidence of record is that Defendant Goolsbe/Skidmore knew that Plaintiff's inhalers (containing Proventil/Albuterol/Warrick and Atrovent) were to be administered in "2 separate puffs every four hours" (or "as needed" with respect to the Atrovent). These instructions are listed on the inmate prescription records submitted by Defendants. [Ex. J to Doc No. 41.]

According to Plaintiff's supplementary affidavit, however, he was already at the hospital before noon on November 7, 2001, and thus a period of more than four hours had not elapsed between the time the medications were confiscated and the time he was taken to the hospital complaining of chest pains. [Steelman Aff. 12-23-03, ¶ 6.] Also, there is no evidence that Defendants delayed taking Plaintiff to the hospital after he complained of chest pains or that they specifically denied any request for another dose of nitroglycerin pills or the inhalers after these medications were confiscated. Thus, even assuming that Defendant

-18-

Goolsbe/Skidmore knew Plaintiff's prescriptions required that another dose be administered at around twelve noon (or before that time if Plaintiff expressed a need for another dose), the evidence of record does not support a reasonable inference that Defendants failed to administer that dose in a timely manner before Plaintiff experienced chest pains and was taken to the hospital.

The evidence does suggest that Defendants could have done a better job of ensuring that any instructions given to the jailer "Lou" at the time of Plaintiff's booking were conveyed to other jail personnel the next day.  They also could have sought guidance from medical personnel about how to administer Plaintiff's prescriptions before confiscating the nitroglycerin pills and the two inhalers, as suggested in Dr. Jenkins' affidavit.  But a showing that Defendants acted negligently because they *should have* known or done more with respect to Plaintiff's medications is not enough to establish the "deliberate indifference" required for a Fourteenth Amendment violation.  See Zentmyer v. Kendall County, 220 F.3d 805, 811-12 (7th Cir. 2000).  "Deliberate indifference" is a "stringent standard of fault" that entails something more than "simple or even heightened negligence."  Bd. of County Comm'sr v. Brown, 520 U.S. 397, 407, 410 (1997); accord Giron v. Corr. Corp. of Am., 191 F. 1281, 1285-86 (10th Cir. 1999).

Further, the deprivation alleged here occurred for only a brief period, involved only some of Plaintiff's medications, and was followed by prompt action in taking Plaintiff to the emergency room and admitting him to the hospital when he complained of chest pains.  Cf. Barney, 148 F.3d at 1311-12 (considering both the severity and the duration of the alleged

-19-

violation).  In these respects, the evidence of record in this case is distinguishable from the authority cited by the Supreme Court in Estelle, 429 U.S. at 105 n.12, which involved a complete refusal to administer or allow access to an inmate's prescribed medication for an extended period of time.  See, e.g., Tolbert, 434 F.2d at 626.

Finally, the evidence of record does not support Plaintiff's claims for municipal or supervisory liability under 42 U.S.C. § 1983.  As noted above, the municipal policy of requiring jail personnel to store, handle, and administer medications [Ex. H, I to Doc No. 41] is not itself unconstitutional under the standards articulated in Bell, 441 U.S. at 539-40..  Further, Plaintiff has not presented evidence to support a theory that Defendant Goolsbe/Skidmore's conduct on the morning of November 7, 2001, resulted from a lack of supervision or training attributable to the other Defendants.  Plaintiff's allegations are limited to a single incident occurring on November 7, 2001, and the need for more training or supervision is not so obvious and so likely to result in a constitutional violation that one can reasonably infer deliberate indifference on the part of municipal or supervisory officials.  See City of Canton v. Harris, 489 U.S. 378, 390 (1989); Carr v. Castle, 337 F.3d 1221, 1229 (10th Cir. 2003); Hollingsworth v. Hill, 110 F.3d 733, 743-45 (10th Cir.1997).  For these reasons, Defendants are entitled to summary judgment on all of the claims in Plaintiff's *Second Amended Complaint* that arise under 42 U.S.C. § 1983 and the Fourteenth Amendment.

### 3.    Plaintiff's State-Law Claims

In addition to asserting claims under the Fourteenth Amendment to the United States Constitution, Plaintiff's *Second Amended Complaint* asserts claims under the parallel provisions of the New Mexico Constitution.  Federal civil-rights laws such as 42 U.S.C. § 1983 do not provide a cause of action for enforcement of state laws, see Jones, 854 F.2d at 1209; Doe v. Leach, 1999-NMCA-117, ¶ 21, 128 N.M. 28, 988 P.2d 1252, and interpretation of a state constitution typically involves novel or complex issues of state law over which federal courts may decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).  The Court concludes, however, that the diversity of citizenship alleged in Plaintiff's *Second Amended Complaint* provides an alternative basis for subject-matter jurisdiction in this case, and the particular issues of state law that are the subject of Defendants' motion for summary judgment are neither novel nor complex.  Accordingly, the Court now addresses those issues as well.

The New Mexico Constitution contains provisions which prohibit the "depriv[ation] of life, liberty or property without due process of law," N.M. Const. art II, § 18, as well as the infliction of "cruel and unusual punishment," id. art. II, § 13.  The meaning and effect of these provisions may diverge from that of their federal counterparts when it is shown that the federal analysis is flawed, state characteristics are distinctive, or there exist structural differences between state and federal government.  See State v. Gomez, 1997-NMSC-006, ¶ 19, 122 N.M. 777,  932 P.2d 1.  "[W]hen a party asserts a state constitutional right that has *not* been interpreted differently than its federal analog, a party also must assert *in the trial*

*court* that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart *and* provide reasons for interpreting the state provision differently from the federal provision."  Id. ¶ 23.

Plaintiff has not identified any established precedent of the New Mexico Supreme Court suggesting a divergent approach to the issues of due process or cruel and unusual punishment under the New Mexico Constitution, nor has he provided any cogent reasons for viewing this issue differently under the state constitution.  In addition, the Court finds no basis under the interstitial approach articulated in Gomez, 1997-NMSC-006, ¶ 21, for interpreting the Due Process Clause of the New Mexico Constitution in a manner that would relieve Plaintiff of the burden of showing deliberate indifference to a serious medical need in this context.  See State v. Augustus, 97 N.M. 100, 637 P.2d 50 (Ct. App. 1981) (construing state and federal constitutional provisions "identically" and applying the "deliberate indifference" requirement articulated in Estelle, 429 U.S. at 104-05).  Plaintiff has not met his burden of showing deliberate indifference to a serious medical need for the reasons previously stated in the Court's analysis of his Fourteenth Amendment claims. Therefore, Defendants are entitled to summary judgment on his state constitutional claims as well.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Defendants are entitled to summary judgment on all claims in Plaintiff's *Second Amended Complaint*, notwithstanding the arguments raised in Plaintiff's motion to strike and in his supplemental responses.

IT IS, THEREFORE, ORDERED that *Defendants' Motion for Summary Judgment Based on Qualified Immunity* [Doc. No. 32] is **GRANTED**.

IT IS FURTHER ORDERED that *Plaintiff's Motion to Strike* [Doc. No. 38] is **DENIED**.

IT IS FURTHER ORDERED that *Plaintiff's Motion for Leave to File His Second Amended Opposition to Defendants' Motion for Summary Judgment* [Doc. No. 48] is **GRANTED**, and the second amended opposition attached thereto is considered in ruling on Defendants' motion.

IT IS FURTHER ORDERED that *Plaintiff's Motion for Permission to File and Proceed on His Attached Plaintiff's Surrebuttal to Defendants' Rereply to Plaintiff's Original and Amended Opposition to Defendants' Motion for Summary Judgment* [Doc. No. 49] is **GRANTED**, and the surrebuttal attached thereto is considered in ruling on Defendants' motion.

IT IS FURTHER ORDERED that this action is **DISMISSED WITH PREJUDICE** as to all claims and all Defendants.

SO ORDERED this 27th day of May, 2004, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*

-23-